IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GWENDOLYN GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:16-CV-48-WKW |
| | ) | (WO) |
| CITY OF MONTGOMERY, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

Before the court are Defendant City of Montgomery's motion for summary judgment (Doc. # 52), which is supported by a brief (Doc. # 53), Plaintiff's response (Doc. # 62), and Defendant's reply (Doc. # 63). Upon consideration of the arguments of counsel, the relevant law, and the evidence, the court concludes that the motion is due to be granted.

## I. JURISDICTION AND VENUE

Subject-matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1343. Personal jurisdiction and venue are not contested.

## II. STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence, and all reasonable inferences drawn from it, in the light most favorable

to the nonmoving party. *Jean–Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B).

If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex Corp.*, 477 U.S. at 324. A genuine dispute of material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

### III. FACTS[1]

Plaintiff Gwendolyn Gray is an African-American female who was born in 1967. She has worked for Defendant City of Montgomery since before 2006.

---

[1] On August 11, 2016, the court dismissed a number of the claims in Plaintiff's Amended Complaint. (Doc. # 31.) Only facts relevant to claims that were not previously dismissed are discussed in this Memorandum Opinion.

Plaintiff contends (1) that she was subjected to race discrimination[2] in October 2014[3] when Defendant did not allow her to interview for a promotion; (2) that she was subjected to race and gender discrimination when she was denied an award for Dispatcher of the Year in 2016; (3) that, since 2006, she has been subjected to a hostile work environment on the basis of her age, race, gender, and protected activities; and (4) that, at the end of May 2014, she was denied equal protection based on her race and gender when she was suspended from work for one day. (Doc. # 26 at ¶¶ 30-31, 38, 55-74.)

Finally, Plaintiff alleges that Defendant denied her rights guaranteed under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*, by refusing to grant twenty-six hours of earned sick leave after incorrectly applying FMLA leave to an earlier health-related absence.

## IV. DISCUSSION

### A. Title VII/§ 1983: Race and Gender Discrimination Claims (Failure to Interview)

Plaintiff brings her race and gender discrimination claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and the

---

[2] On August 11, 2016, the court dismissed Plaintiff's claim that the failure to interview was the result of gender discrimination. (Doc. # 31 at 8, 14.)

[3] In the Amended Complaint, Plaintiff alleges that the failure to interview occurred in October 2015. (Doc. # 26 at ¶ 29.) However, discovery revealed that the incident occurred in October 2014.

3

Fourteenth Amendment's Equal Protection Clause as enforced by 42 U.S.C. § 1983. She seeks to prove these claims with circumstantial evidence. "The elements of a section 1983 claim of race or gender discrimination are the same as the elements of a Title VII disparate treatment action." *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000) (citing *Cross v. Alabama*, 49 F.3d 1490, 1507-08 (11th Cir. 1995)); *see also Harris v. Shelby Cnty. Bd. of Educ.*, 99 F.3d 1078, 1082–83 (11th Cir. 1996) ("We evaluate Title VII and 42 U.S.C. § 1983 race discrimination claims supported by circumstantial evidence using the framework set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)."); *see also Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1236–37 (11th Cir. 2016) (noting that "Title VII and [§] 1983 claims have the same elements [of proof] where the claims are based on the same set of facts").

Based on the foregoing, Plaintiff's race and gender discrimination claims under Title VII and § 1983 are subject to the three-step burden-shifting analytical framework outlined in *McDonnell Douglas*, and its progeny. (*See* Doc. # 62, at 8 (invoking the *McDonnell Douglas* framework for the analyses of Plaintiff's discrimination claims).) First, a Title VII plaintiff "must carry the initial burden . . . of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp.*, 411 U.S. at 802. Second, if the plaintiff establishes such a prima facie case, "thereby raising an inference that [s]he was the subject of intentional race [or gender] discrimination, the burden shifts to the defendant to rebut this inference by

presenting legitimate, non-discriminatory reasons for its employment action." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) (per curiam) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)). Third, "[w]here the defendant meets this burden, the plaintiff has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." *Id.* at 1565 (citing *McDonnell Douglas*, 411 U.S. at 804; *Roberts v. Gadsden Mem'l Hosp.*, 835 F.2d 793, 796 (11th Cir. 1988)). "Put another way, once the employer succeeds in carrying its intermediate burden of production, the ultimate issue in the case becomes whether the plaintiff has proven that the employer intentionally discriminated against h[er] because of h[er] race" or gender. *Id.* (citing *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994)).

### 1. *Title VII and § 1983: Failure to Interview*

In Counts I and VI, Plaintiff asserts a claim pursuant to Title VII and an equal protection claim pursuant to § 1983, alleging that Defendant discriminated against her on the basis of race[4] when, in October 2014, she was not interviewed for a promotion to sergeant. (Doc. # 26 at ¶¶ 30, 77.)

Defendant, in its opening brief, argues that Plaintiff cannot demonstrate a prima facie case because she is unable to "identify an individual not of her protected

---

[4] In her amended complaint, Plaintiff also alleges that the October 2014 failure to interview was the result of gender discrimination. The court previously dismissed Plaintiff's gender discrimination claims. (Doc. # 31 at 8, 14.)

5

class who was treated more favorably than she was." (Doc. # 52, at 2; *accord* Doc. # 53, at 13.) This argument hones in on the fourth element of the prima facie case; hence, for purposes of this opinion, it is assumed *arguendo* that Plaintiff meets the other elements of the prima facie case.[5]

To satisfy the fourth element of the prima facie case in a failure-to-promote case, the plaintiff must show that "other equally or less-qualified employees outside her class were promoted," *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010), or that, "after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications," *Wall v. Tr. Co. of Georgia*, 946 F.2d 805, 809 (11th Cir. 1991). But, as here, "[o]n a defendant's motion for summary judgment, the plaintiff need not come forward initially to present its prima facie case. Rather, the defendant carries the burden of demonstrating that the plaintiff lacks evidence which could establish a prima facie case." *Dickson v. Amoco Performance Prod., Inc.*, 845 F. Supp. 1565, 1569 (N.D. Ga. 1994) (citing *Celotex*, 477 U.S. at 323); *see also* Fed. R. Civ. P. 56(c)(1)(B) ("A

---

[5] In its reply brief, Defendant makes a conclusory argument that Plaintiff's claims focus on Defendant's failure to interview her for a promotional position (and not on its failure to promote her) and that a failure to interview is not an adverse employment action. As the court observed at an earlier stage of this proceeding, Plaintiff "has alleged that she was denied an interview as part of an attempt to receive a promotion." (Doc. # 31, at 8.) Whether Defendant's parsing of the claims is appropriate and, if so, whether a failure to interview is an adverse employment action will not be considered because Defendant raised these points for the first time in its reply brief and because Defendant provided no supporting legal authority. *See Brown v. CitiMortgage, Inc.*, 817 F. Supp. 2d 1328, 1332 (S.D. Ala. 2011) ("New arguments presented in reply briefs are generally not considered by federal courts." (citations omitted)).

party asserting that a fact cannot be . . . genuinely disputed" may support its contention by showing "that an adverse party cannot produce admissible evidence to support the fact.").

By showing that Plaintiff is unable to identify a similarly situated individual outside of her protected class who was treated more favorably than she was, Defendant has carried its initial summary judgment burden to establish an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. Therefore, the summary judgment burden shifts to Plaintiff to come forward with evidence that a similarly-situated individual outside of her protected class was treated more favorably than she was, or, alternatively, or, alternatively, "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."[6] *Smith v. Lockheed-Martin Corp.*,

---

[6] At the pretrial conference held on March 22, 2018, Plaintiff appeared to concede that she could not point to a legitimate comparator, but instead suggested, without citing evidence, that she was not promoted as part of a pattern and practice of discrimination. Because Plaintiff did not clearly allege a pattern and practice failure to interview claim in her amended complaint, because she did not raise the pattern and practice claim in response to Defendant's summary judgment motion, and because she cited no evidence of a pattern or practice of racial discrimination when she raised the argument for the first time at the pretrial conference, the court will not consider Plaintiff's argument that the failure to interview was part of a pattern and practice of discrimination. *See Pace v. S. Ry. Sys.*, 701 F.2d 1383, 1388 (11th Cir. 1983) (holding that if, in lieu of establishing a prima facie case of discriminatory treatment with evidence of a similarly situated comparator outside the plaintiff's protected class who was treated more favorably, the plaintiff instead seeks to establish a prima facie case based on the employer's pattern and practice of discrimination, the plaintiff "has the burden of presenting such statistical evidence that will, in conjunction with the other elements [of a prima facie case], give rise to an inference of discrimination").

644 F.3d 1321, 1328 (11th Cir. 2011) (internal quotation marks and footnote omitted).

Plaintiff argues that she has raised an inference of discriminatory motive because Angela Rigsby, a Caucasian female, was interviewed and promoted in 2007. For purposes of considering the summary judgment argument, the court assumes that Plaintiff was treated less favorably than someone (Angela Rigsby) outside of Plaintiff's class. However, Plaintiff has not pointed to any evidence that Angela Rigsby is a similarly situated individual. The mere fact that two individuals applied for promotions seven years apart is not sufficient to show that they were similarly situated. Specifically, Plaintiff has not shown that she was at least as qualified as Rigsby or that the conditions surrounding Rigsby's application and Defendant's decision to interview her were similar to the conditions surrounding Plaintiff's application seven years later and Defendant's decision not to interview her or anyone else[7] for an open position in October 2014. *Cf. Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004) (holding that "[a] plaintiff presents a prima facie failure to promote case by showing", among other things, that "other equally or less qualified employees who were not members of the protected class were promoted"), *abrogated on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006); *cf.*

---

[7] It is undisputed that none of the individuals on the registry of qualified applicants, all of whom were African-American females, were interviewed in conjunction with the October 2014 selection process.

8

*also Masters v. City of E. Point*, 313 F. App'x 239, 240 (11th Cir. 2009) (affirming summary judgment for the employer where the plaintiff, a white applicant who was not interviewed for a promotion, did not demonstrate that he was at least as qualified as black employees who were interviewed and promoted).

Moreover, even if Angela Rigsby could be considered a similarly situated individual, Plaintiff has failed to show that Defendant's proffered nondiscriminatory reason for the failure to interview Plaintiff in October 2014 is a pretext for discrimination. As indicated by the parties' summary judgment filings, and as further clarified at the March 22, 2018 pretrial conference, there is no dispute that (1) pursuant to Defendant's policies, if fewer than five individuals qualify to be interviewed for an open position, Defendant will determine whether to go ahead and fill the position; and (2) because fewer than five individuals were on the register when Plaintiff applied for a promotion in October 2014, Defendant decided to leave the position open.[8] (Doc. # 52-16; Doc. # 62-2 at 3-4.) Defendant is not obligated to demonstrate that its decision to leave the position open was a sound business decision, only that its decision was not based on prohibited discriminatory animus. Defendant has met that burden; therefore, Plaintiff must show that the proffered reason is pretext for discrimination. *See Chapman v. AI Transp.*, 229 F.3d 1012,

---

[8] At the May 22, 2018 pretrial conference, Plaintiff did not dispute that the position was effectively filled in April 2016, when Plaintiff was among those interviewed and promoted.

1030 (11th Cir. 2000) (holding that "[p]rovided that the proffered [nondiscriminatory] reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason").

Plaintiff can show that Defendant's proffered nondiscriminatory reason for deciding not to interview anyone in October 2014 is a pretext for racial animus, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir. 1983) (citation and internal quotation marks omitted). Plaintiff has made no such showing. The mere fact that the four applicants who were not interviewed in October 2014 happened to all be African-American women does not, without more, suffice to establish a factual dispute as to whether their race was likely the motivating factor in Defendant's decision to leave the position open, or that Defendant's proffered explanation lacks credibility.

Accordingly, Defendant's summary-judgment motion is due to be granted as to Plaintiff's Title VII and § 1983 race discrimination claims (Count I and Count VI) that Defendant subjected her to race discrimination when it did not interview her for the promotional position in October 2014.

> **2.** *Title VII and § 1983: Race and Gender Discrimination (Failure to Award Plaintiff Dispatcher of the Year in 2016)*

In Counts I, II, and VI, Plaintiff contends that Defendant discriminated against her because of her race and gender when it did not select her for the Dispatcher of the Year award in 2016. She brings these claims under § 1983 invoking the Equal Protection Clause of the Fourteenth Amendment and also under Title VII.

Defendant argues that Plaintiff cannot survive summary judgment on these claims because it is undisputed that an African-American female received the 2016 Dispatcher of the Year award. On this record, the court agrees.

The fourth element of the prima facie case of discrimination under the *McDonnell Douglas* framework, which applies to these claims, typically requires the plaintiff to show that he or she was "treated less favorably than a similarly-situated individual outside her protected class[es]." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas*, 411 U.S. at 802). To satisfy this element, the plaintiff must identify a comparator — someone "similarly situated to the plaintiff in all relevant respects," *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1326 n.17 (11th Cir. 2011) (citing *Holifield*, 115 F.3d at 1562) — whom the defendant treated differently. Additionally, "the plaintiff will always survive summary judgment if he [or she] presents circumstantial evidence that creates a triable issue concerning the

employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Plaintiff cannot make the requisite showing here.

The individual who received the coveted award in 2016 is an inapt comparator for Plaintiff. Both parties acknowledge that the recipient is a black female like Plaintiff. As such, she and Plaintiff are each members of the same protected classes. "By definition, she is not a comparator for Plaintiff because any difference in Defendant's treatment of [the 2016 award recipient] and Plaintiff would have to be attributable to something other than race and/or gender." *Herron-Williams v. Alabama State Univ.*, No. 2:16-CV-293-WKW, 2018 WL 736037, at *10 (M.D. Ala. Feb. 6, 2018). Plaintiff also does not put forward any other evidence that would permit a reasonable jury to infer that Defendant denied her the award because of her race or gender. Rather, Plaintiff attempts to reformulate her claim, arguing instead that she did not receive the award because of her age and because she engaged in protected activity. The problem with her argument is that the court already has dismissed her age-discrimination and retaliation claims.[9] (Doc. # 31.)

For these reasons, summary judgment is due to be granted as to Plaintiff's Title VII and § 1983 equal protection race and gender discrimination claims (Counts

---

[9] Counts I and II of the Amended Complaint (Doc. # 26 at 26-39), which are still pending, do not contain allegations of retaliation. Count IV, which encompasses claims for retaliation in violation of Title VII and the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. §§ 621 *et seq.*, has been dismissed. (Doc. # 31, at 8–9, 14.) Plaintiff's § 1983 equal protection claim (Count VI) alleging retaliation also has been dismissed. (Doc. # 31 at 12, 14.)

I, II, and VI) that arise out of Plaintiff's non-selection for the 2016 Dispatcher of the Year award.[10]

### 3. *Section 1983 Equal Protection Claim: May 2014 Suspension*

Count VI of Plaintiff's Amended Complaint is construed as including a claim that, in March 2014, Defendant discriminated against Plaintiff on the basis of race and gender when it suspended her from her job for one work day.[11] This is a claim that Defendant subjected Plaintiff to discriminatory discipline.

To demonstrate a prima facie case of discrimination where discriminatory discipline is at issue, the *McDonnell Douglas* formula typically requires a plaintiff to show, among other things, that she was "treated less favorably than similarly situated individuals outside his protected class." *Williams v. Alabama Dep't of Corr.*, 649 F. App'x 925, 929 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 1134 (2017).

---

[10] The parties disagree whether the evidence shows that Plaintiff received a nomination for the 2016 Dispatcher of the Year award so as to qualify her to receive it. *See Maynard*, 342 F.3d at 1289 (observing that another element of the prima facie case under the *McDonnell Douglas* framework requires the plaintiff to show that he was qualified for the position from which he was terminated). However, the absence of evidence of a similarly situated comparator or any other evidence of racial or gender discriminatory intent on the part of Defendant obviates the need to resolve the parties' disagreement as to Plaintiff's qualifications for the award.

[11] Count VI does not set forth the specific acts and omissions upon which it is based. Instead, Count VI merely incorporates by reference all previous paragraphs of the Amended Complaint and provides general assertions that Plaintiff was subjected to unfair discipline and discrimination in the workplace since 2006. However, it is reasonable to infer that the March 2014 suspension is included as a basis for the race and gender discrimination alleged Count VI, and Defendant's summary judgment motion addresses the March 2014 suspension in that context. Plaintiff's Title VII claim based on the March 2014 one-day suspension did not survive Defendant's motion to dismiss for failure of Plaintiff to file a timely EEOC charge. (Doc. # 31, at 6.)

"When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, [the Eleventh Circuit] evaluate[s] 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" *Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (alterations added)).

Defendant contends that the one-day suspension arose from Plaintiff's mishandling of a dispatcher call she received from a Montgomery law enforcement officer who was seeking information about whether a neighboring law enforcement agency needed assistance with an emergency in progress. Moving for summary judgment on this claim, Defendant argues that Plaintiff has not identified any comparator. It has submitted an affidavit from Melinda Chandler, the chief of staff of the City's Department of Emergency Communications. Ms. Chandler acknowledges that Plaintiff did claim that her coworkers had committed the same violation as she allegedly did but were not disciplined. However, Ms. Chandler attests that Plaintiff did not provide either her or her supervisors with "sufficient details" and, thus, they were unable to "investigate or verify" her allegations. (Doc. # 52-14, at 4 ¶ 9.) She says that "had [Plaintiff] provided details so [they] could substantiate her claims, anyone else who took that same action would have also been subject to corrective action if substantiated." (*Id.*) Rebutting Ms. Chandler's affidavit, Plaintiff submits an affidavit that "[e]very dispatcher [she] spoke with" has

14

handled similar calls in the same manner as Plaintiff did and that Plaintiff's handling of the call was "common practice." (Doc. # 62-5, at 3.) But Plaintiff's affidavit does not create a genuine dispute of material fact as to whether there is an appropriate comparator.

Conclusory assertions of differential treatment do not permit a reasonable inference of discrimination. *See Liu v. Univ. of Miami*, 138 F. Supp. 3d 1360, 1372 (S.D. Fla. 2015), *aff'd sub nom. Wen Liu v. Univ. of Miami Sch. of Med.*, 693 F. App'x 793 (11th Cir. 2017) ("The plaintiff must identify a specific comparator . . . — not conclusory statements that she was treated differently than members outside of her protected class." (citing *Woods v. Cent. Fellowship Christian Acad.*, 545 F. App'x 939, 945 (11th Cir. 2013)). Plaintiff has offered nothing more than general assertions that she was treated differently than similarly situated employees who are not in her protected classes. She says she spoke to dispatchers, but she does not identify any one of them. Nor has she indicated the race or gender of the dispatchers with whom she allegedly spoke. Plaintiff also cites no other evidence that raises an inference of purposeful discrimination. Because Plaintiff has failed to produce any concrete evidence of a similarly situated employee outside of her protected classes who was treated more favorably or other evidence of discrimination, she cannot establish a prima facie case of discriminatory discipline under the *McDonnell Douglas* formulation.

Moreover, even if Plaintiff had established a prima facie case, she has not shown that the legitimate, non-discriminatory reason Defendant proffered for disciplining her — a violation of workplace procedures (*see* Doc. # 52-2, at 37) — was pretextual. There simply is no evidence of intentional race or gender discrimination on Defendant's part. *See* generally *Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir. 1991) ("'Section 1983 actions challenging racial discrimination under the equal protection clause . . . require a showing of discriminatory motive,'" such as "'proof of actions taken by the employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations'") (quoting *Lee v. Conecuh County Bd. of Educ.*, 634 F.2d 959, 962 (5th Cir. 1981)).

Accordingly, Defendant is entitled to summary judgment on Plaintiff's § 1983 claim that her suspension was the result of race and/or gender discrimination.

B. **Title VII and § 1983 Claims: Hostile Work Environment**

In Count V and VI of her Amended Complaint, Plaintiff alleges that she was subjected to numerous adverse incidents[12] that contributed to a hostile work

---

[12] Count V and VI do not specifically set out all the alleged incidents that allegedly contributed to a hostile work environment. An April 2016 failure to promote may be one of the incidents that allegedly contributed to a hostile environment. (Doc. # 26 at ¶¶ 25, 62.) However, the April 2016 failure to promote is *not* arguably included in Count I or II of the Amended Complaint alleging Title VII race and gender discrimination.

environment because of her race, color, gender, age, and prior protected activities. (Doc. # 26 at ¶ 56.)

To establish a hostile work environment claim under either Title VII or § 1983,[13] Plaintiff must establish the following: "(1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

Defendant argues that the record is devoid of evidence on the third and fourth elements. In response, Plaintiff merely reiterates that she was subjected to numerous adverse actions that led to a hostile work environment, but she cites no evidence that the hostile work environment was the product of race, color, gender, or age discrimination, or retaliation for engaging in protected activities.

The evidence, when viewed in the light most favorable to Plaintiff, does not create a genuine dispute of material fact on any of her myriad theories of hostile

---

[13] The elements are the same for hostile-work-environment claims under § 1983 and Title VII. *See Watkins v. Bowden*, 105 F.3d 1344, 1355 n.19 (11th Cir. 1997).

work environment. There is a dearth of evidence that any of the complained-of conduct was based on a protected characteristic. At most, the evidence indicates that Plaintiff worked in an unpleasant environment. Additionally, the incidents cumulatively also do not rise to the level of severity or pervasiveness required in this circuit to maintain a hostile work environment claim. Accordingly, Defendant is entitled to summary judgment on Plaintiff's Title VII and § 1983 hostile work environment claims (Count V and VI).

## C. FMLA Claim

In Count VII of her complaint, Plaintiff alleges that she received approval to take 26 hours of paid sick leave, but was forced to take unpaid FMLA leave instead. (Doc. # 26 at ¶¶ 80–87; Doc. # 31 at 13.) However, in her deposition, Plaintiff clarified her FMLA claim by stating that "[t]here was not 26 hours of sick leave on the books that [Defendant] wouldn't let me use" and that, instead, she simply wanted to use a doctor's excuse to receive non-FMLA leave for those 26 hours and reserve the remainder of her FMLA leave for another time. (Doc. # 52-5 at 14.)

Defendant cites its FMLA policy, which states that paid leave must be exhausted against FMLA leave and that "paid time will run concurrently with an employee's FMLA entitlement." (Doc. # 53 at 19-20; Doc. # 52-17 at 5.) Plaintiff does not dispute that the FMLA permits an employer to require the employee to use FMLA leave and paid sick leave concurrently. *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1205 (11th Cir. 2001) (holding that, under

the FMLA, "the employer may require that the employee use his FMLA leave entitlement and his paid sick leave concurrently" and that "Congress intended that the FMLA provide employees with a minimum entitlement of 12 weeks of leave, while protecting employers against employees tacking their FMLA entitlement on to any paid leave benefit offered by the employer").

In response to the summary judgment motion, Plaintiff cites no evidence that she was denied a request to use paid sick leave instead of FMLA unpaid leave. Plaintiff also cites no evidence that she was entitled to unpaid, non-FMLA sick leave at any time, and especially before exhausting her FMLA leave. Instead, in her deposition testimony, Plaintiff stated that she did not have 26 hours of leave and was not denied use of leave that she had accrued. (Doc. # 52-5 at 14 ("There was not 26 hours of sick leave on the books that [Defendant] wouldn't let me use.").)

Plaintiff argues that her requested 26 hours of leave for knee surgery recovery should have counted as ordinary sick leave because it did not qualify as FMLA leave. However, Plaintiff cites no evidence, legal authority, or provision of Defendant's leave policy to support her conclusory allegation that the knee surgery recovery did not qualify as FMLA leave. Further, as noted, Plaintiff admitted in her deposition that she did not have 26 hours of sick leave available; thus, even if Plaintiff had requested 26 hours of non-FMLA sick leave, she has not shown that she would have been eligible to receive it.

19

Accordingly, there is no genuine dispute of material fact as to the propriety of Defendant's calculation of Plaintiff's FMLA and sick leave, and Defendant is entitled to summary judgment on Count VII of the Amended Complaint.

## V.     CONCLUSION

Accordingly, it is ORDERED that Defendant's motion for summary judgment (Doc. # 52) is GRANTED and summary judgment is entered in favor of Defendant City of Montgomery and against Plaintiff Gwendolyn Gray on all remaining claims in Plaintiff's Amended Complaint.

Final judgment will be entered separately.

DONE this 11th day of April, 2018.

                                              /s/ W. Keith Watkins
                                  CHIEF UNITED STATES DISTRICT JUDGE